Good morning, Your Honors. May it please the Court, my name is Lisa Johnson and I represent Carlos G. Rocha, the appellant. Appellant Mr. Rocha seeks to have this Court reverse the District Court's dismissal of his complaint with prejudice. The case raises three primary issues. One, whether under the standard of Rule 12b-6, the District Court could disregard factual allegations in the appellant's complaint to find that he voluntarily excluded himself from an aggregate settlement mediated in Flago v. FedEx Ground. That was case number 05C v. 023-26. And two, whether Illinois law would recognize a claim against an attorney for the loss of a settlement or damages arising from something other than the complete loss of any and all claims and causes of action. And three, Ms. Johnson could... Oh, I'm sorry, you finish your thought. And the third issue would be to the extent Illinois law would recognize any other measure of damages or Rocha's claim for specific performance of a defendant appellant's duty in their retention agreement to turn over documents and legal files, would the District Court's finding that the sole measure of damages in a case against an attorney in Illinois would be the loss of any and all claims and causes of action, would that finding render Mr. Rocha's complaint either premature or deprive the Federal Court of jurisdiction, making diversity jurisdiction, the jurisdictional amount a legal impossibility? Well, now, the complaint was dismissed because Mr. Rocha failed to allege that his claims were not viable after the defendants withdrew from representing him. Could he have continued to pursue the same claims brought on his behalf by the defendants after the defendants withdrew from the case? And preserved his right to the aggregate settlement and his right to the money in which he believes and asserts was mediated on his behalf? No, I do not believe so. I believe that if he wanted to, the whole reason why he participated in the aggregate settlement is because he did not want to undertake the years that it may take to prove the claims asserted by defendants in Flagle. I thought he opted out. No, he didn't. I don't know. Actually, I thought it was a class action as well. Let me just clarify because there was an aggregate settlement that was reached on May 24, 2012, on behalf of 113 plaintiffs in Flagle. However, after that settlement which was reached, I guess there were about 27 additional prospective plaintiffs and other plaintiffs that were interested and there was a renegotiation or a new settlement or some other agreement reached between plaintiffs, counsel defendants in Flagle, and the FedEx counsel, something to convert the aggregate settlement to something like a class action. And unfortunately, because the motion and these matters were filed under seal and not disclosed, we don't know how exactly the terms, but there was an aggregate settlement for 113 plaintiffs and then there was a subsequent renegotiation, a new agreement in which my client did not want to participate in. But what was represented to the court, we thought based on looking at the record, it looked like it was converted to a class action. We were told that people were receiving calls, so I assumed it was a class action. And so I assumed that the defendants told the judge that my client opted out. I was later told that it was not a class action, it was just treated like one. Right, maybe that was the... So he did not opt out. It was the wrong choice of words. This is multi-plaintiff litigation and he objected to the settlement that had been negotiated with the mediator from Northwestern and that's when you stepped in to take over representation and the defendant firms withdrew and his claims were still viable then. And the point of the dismissal order here is that forecloses any claim for legal malpractice, breach of contract, breach of fiduciary duty, or anything else. And that goes to the first question of whether the district court could disregard the allegations of the complaint and the actual evidence in the record as well that shows my client did not reject or opt out or refuse to participate in the aggregate settlement. Instead, you have an email from me that clearly confirmed to him that if they, you know, to go forward with the aggregate settlement and you had him signing an acknowledgement and a waiver of conflicts, it indicated that he wanted to participate in the aggregate settlement. And it was only after that he was told that he would not have an opportunity to review the actual terms of the agreement until after it was approved. And so, the one thing that the judge and Honorable Shader seemed to say was that my client had a choice. But as the email, early emails exchanged indicated my client never felt he had a choice because at least from my client's perspective and supported by the defendant's own opinion, he believed his claims had been, were either barred by the statute of limitations at that time or otherwise not worth the pursuit. So, he indicated very early on that he was going to accept the settlement and that whatever issues he had with the defendants, he would resolve those later. But he wanted to participate and he did not exclude himself. In fact, it was his position at that time that he had no choice but to accept due to the situation he had been put in by the defendants. And this was on a 12b6. And so, we believe that the Honorable Shader had to accept the allegations of his complaint and if there's evidence that he voluntarily chose not to participate. So what we'll find from the record is that he clearly indicated he wasn't going to participate in the settlement or was going to participate? That he was. He executed a waiver. He waived the conflicts and he executed an indication that he didn't want to participate. And in fact, though FedEx did not take a strong position either way when asked about the settlement, when my client, Mr. Rocha, filed a new action, FedEx then took the position as well that there was an aggregate settlement that included Mr. Rocha and that the defendants, in fact, had never excluded him from that settlement. So at that point, we offered to dismiss everything if they just disclosed to us the settlement terms. But we have yet to get a copy of the settlement agreement that was signed and approved by the court because it was filed under seal with the motion. So when Judge Castillo allowed the substitution of counsel and accepted the settlement on behalf of all the other plaintiffs and dismissed your claims, your client's claims, without prejudice to refiling, he just made a mistake? I'm sorry. I guess I don't understand. At the time, Honorable Castillo... The procedural history is Judge Castillo accepted the substitution of counsel and accepted the proposition that your client wanted to go it alone and not with the rest of the group and resolved the case with respect to the rest of the group pursuant to the settlement and dismissed your client's claims without prejudice to refiling and you, in fact, refiled them. The docket in case number 05-CV-02326, the docket actually reflects that that was not the case. On May 24th, there was the mediated settlement. On May 25th, he dismissed with leave to reinstate prior to approval of the settlement. He approved the settlement on either the end of July, August 3rd, I believe, the beginning of August. He approved that settlement and we don't know if he retained jurisdiction because the motion and everything was filed under seal and not disclosed to us, but at that point, my client was part of the settlement and had a right to his share of the settlement and disclosure of the settlement terms that was submitted to the court for approval. Well, did you refile individual claims? You mean, did we refile after my client was excluded? Yes. After that, the defendants, which is what Mr. Ranch is alleging, defendants thereafter, without his consent, excluded him from the aggregate settlement and demanded he sign a new individual settlement agreement that misrepresented the procedural posture of the case, misrepresented his representation and other things. My question was, did you refile the claims within the context of that lawsuit? Not individual claims. No, because... So you didn't take Judge Costillo up on his... You can't talk over me, okay? My apologies. You did not take Judge Costillo up on his offer to refile individual claims on behalf of your client? We did, yes. Okay. I understood that you did not and instead waited until it was all over and then filed a whole new lawsuit. It was already over. You did not refile individual claims. Okay, I'm sorry. The case was closed before Honorable Costillo at the time, at the time, the case was closed in August at the time in which... Right, but we've got a three-month time period when you could have refiled individual claims on behalf of your client because Judge Costillo gave you that option and you didn't do so. Not in that case. He gave us the option. In that case, that case was closed. Case number 2326 was closed and in fact, I think the time period for appeal had already passed at the time they even filed the dismissal with prejudice for the other clients. I think what you're saying is in September, there was a motion for them to withdraw and there was a motion for defendants to withdraw as counsel and there was a stipulation to dismissal with prejudice of all of the other plaintiffs, but a dismissal with prejudice was not filed against my client because the issue of his right or the aggregate settlement had not been resolved at that time. So my client was accepted out of that. It did not, according to FedEx's counsel, in our conversations again, we need discovery on this, but it did not impact the settlement at all. It simply dismissed the other defendants, plaintiffs. Mr. Penn? Good morning, Your Honor. Would you answer the question Judge Sykes just asked? Yeah, I was going to either start there or end there. The question that Judge Rovner asked at the beginning and then Your Honor was focusing in on was, were those claims pursued? And the answer is unequivocally yes. They were initially pursued in front of Judge Castillo and then Judge Castillo, that brought about the dismissal order where Judge Castillo said, you are granted leave to refile if you can do so coherently in less than 300 paragraphs. And that puts a very, very fine point on what has been the challenge in this case from the beginning and that I feel that Judge Shader did a nice job of addressing and that's that we're dealing with a conflagration here of class action slash, well it was originally a multi-district litigation, but we're talking about claims that are being brought. It's not a class action. It's not a Rule 23 class action. It's a participative group action. Coupled with now a legal malpractice element on top of that, so we're dealing with law that is, I'll say peculiar, if not counterintuitive in many respects. And I want to talk a little bit about those, those peculiar areas. One is this idea of much of the opening brief is spent talking about damages and the existence of damages, but the existence of damages is not really the issue. What Judge Shader was correctly focused on is whether or not there were proximately caused damages. It's really more of an issue and they're related, but the issue is not the existence of damages. The existence of damages can't be there. The issue is proximate causation. And Illinois law is clear that you can't sue a lawyer for legal malpractice if at the time your representation ends there are still viable claims. We know that's the case and that was the issue that it was a very simple, it's a very simple question to ask and we never really got a simple answer. You would think that the answer we expected was unjust enrichment has a five-year statute of limitations. It began on X date, expired on X date, and therefore that has expired. We never got anything like that. We never, we, we, we got a lot, but it was, there was never, the issue was never really teed up. So proximate causation was where we were focusing and that addresses all claims. That's not, you know, that's a legal malpractice concept that we're dealing with in Illinois, but it also applies to fraud. It applies to all the claims that we, the viable claims that were at issue there. The other confusing area here is this idea of I want the settlement. I want to be in the settlement. I was in the settlement, but I didn't want to be in that settlement. I didn't want to give that release. There seems to be some sort of misunderstanding, a fundamental misunderstanding that, yeah, I wanted the money. I just didn't want to give up all my claims. And so I agreed to take the money, but I didn't agree to give up all my claims. Well, that's not a settlement and that's, and that's not a, that's what Judge Castillo said. Frankly, it's what the plaintiff is saying. It's just the conclusion is different. We're good on the whole, we get to the, I want the money and we're good on the, but I don't want to give the release. The problem is the conclusion that the plaintiff is drawing is therefore I was in the settlement. I said I wanted the money. I gave you authority to give this narrow release and you didn't get it for me. So that's not legal malpractice. That's not fraud. So are you, are you, forgive me, but are your, what you are saying is that he was excluded from the settlement agreement because he refused to sign the required release, right? Yeah. He was excluded. He excluded himself. Well, exclude, I don't want to use this in the legal term. This was a collective action. This was not a class action. So I don't want to say excluded in the sense of a, it wasn't an opt out. It was a, he, a collective settlement was reached, an aggregate settlement was reached on behalf of 113 plaintiffs. When presented to the 113 plaintiffs, and it would, by the way, it was mediated by an extremely well-respected mediator and it was approved by a well-respected judge. So we're dealing with an open air, albeit not open court settlement. And when it got time for the 113 to agree to the scope of release that was negotiated, he, the plaintiff didn't want to agree to that. So he declined to participate in the settlement on his terms. He declined to participate in the settlement. And the settlement provided for this. This is not a rare instance in collective actions. The settlement provided, I believe, there's a percentage that they say this many percent of the people must participate because FedEx doesn't want to say, well, we'll agree to this and then have one person participate and 112 opt out. So it's a, and it's a pretty high threshold. So could he have, could he, forgive me, could he have proceeded with the same cause of action on his own at that time? The answer is yes. And the answer is he did. He filed a lawsuit against FedEx in front of Judge Castillo. He filed a complaint and that brought about the dismissal order where Judge Castillo said, I can't understand this complaint. It's too long. It's too much. You, you have leave to either file one that is 300 paragraphs or less, or alternatively you can go to state court. There was no question about timeliness. There was no ruling on timeliness. I don't believe, I don't believe there was a question. I don't believe there was. I can't, I'm sorry, I don't want to misstate the record. I don't believe it was challenged on timeliness. I believe it was challenged, and this has been a running theme throughout this, is Rule 8's plausibility, and I've learned more about Rule 8 plausibility than I ever thought I would know. But this complaint was a difficult complaint, a very, very challenging complaint to sift through. Judge Shader did an excellent, excellent job of getting through a lot of chaff to get to the wheat, and really the crux of this is did he have a viable claim? The answer to that, on all accounts, is yes. And we asked four times, five times we went to court, four times we went to court trying to resolve the very, very simple issue, and it's not a difficult question. Was there a viable claim? And we never got a definitive answer. We're here today, we still don't have, I mean, our answer now is no. We know the answer is that there is not one, but we never, we're answering it in the negative because we were never given one. There's one last point that I want to make, and that's with respect to the statute of limitations. We have totally ignored, well, plaintiff has totally ignored this argument, but the statute of limitations is strong, and I say that acknowledging that it is a rare instance that a 12b6 motion warrants a statute of limitations defense. Having said that, it's also a rare instance that we have this much detail in allegations, and the record here shows in May, the plaintiff knew of the settlement, didn't want to accept the settlement, and on June 1st said, we are going to hold you responsible for any damages. More than two years later, they filed a lawsuit. That's unequivocally in the record, undeniable. Illinois, and this is something that we could have been a little tighter on, but in Illinois, the statute of limitations is very, very clear against lawyers, and that is that any claim, and the quote is, based on tort, contract, or otherwise, that in any way relates to the provision or to the act of omission in the performance of legal services has a two-year statute of limitations. So that doesn't apply just to legal malpractice. It applies to fraud. It applies to breach of contract. It applies to breach of fiduciary duty. It applies to everything, and Illinois law is clear. That is an expansive, as it is written, statute of limitations, and they don't address it. We raised it. We raised it in the trial court. Judge Shader didn't rule on it, but that alone is sufficient. So if there are no other questions, I'll be happy to stop. Judge Rueben, anything? No. Thank you. Okay. Thank you, Judge. I'll give you a minute to respond. Oh, did I go over my slide? You certainly did. My apologies. Thank you for the minute, Your Honors. I think it comes down to the effect on the 12 question of a 12B6 motion where the complaint has alleged and has attached affirmations both in e-mail correspondence and acknowledgement and waiver accepting and choosing to participate in the settlement, whether the Honorable Shader of the district court could disregard those allegations and that evidence on a 12B6 motion and find that Mr. Rocha, the appellant, voluntarily excluded himself from the settlement. He absolutely did not refuse to sign a release and release all of his claims, and when he learned that there was, in fact, a confirmed settlement, he agreed before Honorable Casillo to dismiss everything before him because he wanted to settle the claims. He never wanted to pursue. So the main issue here is whether or not he was deprived his right to a settlement and deprived his right to participate in the settlement, and that's what my client's claims are. And the settlement wasn't until after June 26th, which would have been two years anyway. So in terms of the statute of limitations, my client wasn't excluded from the aggregate settlement until after it was approved until September. So there's no statute of limitations claim. Thank you, Counsel. The case will be taken under advisement, and the court will be in recess. Thank you.